## PETERSON *v.* THE STATE.

The evidence raised the issue whether the homicide was voluntary manslaughter or murder, and the accused was legally entitled to have that issue submitted to the jury. Accordingly, it was error to overrule a motion for new trial based upon the ground that the court did not instruct the jury on the law of voluntary manslaughter.

OCTOBER 18, 1916.

Indictment for murder. Before Judge Cox. Calhoun superior court. April 1, 1916.

*Smith & Miller,* for plaintiff in error.

*Clifford Walker, attorney-general, R. C. Bell, solicitor-general, F. A. Hooper,* and *Mark Bolding,* contra.

GILBERT, J. According to the evidence introduced by the accused, the law of voluntary manslaughter should have been included by the court in the instructions to the jury. It was within the province of the jury to accept or reject this theory of the case, but in either event it was a substantial legal right of the accused to have the issue submitted. It was in evidence that the deceased, Bill Black, had threatened the life of the defendant, Bob Peterson; indeed, Mr. Sealy, sworn for the defendant, testified that Black said that day, referring to Peterson, "I'm going to get him; I don't let any nigger call me a damn liar," and "I'll get him; I ain't

going to take that from anybody." Charlie Stone, sworn for the defendant, testified, that "Bill Black spoke and cursed him [Peterson], and said he was a damn liar, . . and then he made at him [Peterson], and his wife grabbed him;" that Black was standing ten or twelve feet from Peterson; that "his wife caught him; he got loose from his wife and broke to the house, and Bob Peterson asked him three times while Black was going to the house, hollered and asked him three times was he going after his gun for him, and after the third time he replied back, and says, 'No, I ain't going after it for you, you durned black son of a bitch, I'm going for it to kill you.' Bob says, 'You can't get to it.' That is when he shot him. He shot twice." According to this witness Black lived about sixty-one or eighty-one steps from the scene of the rencounter. Will Berry and John Peterson, sworn for the defendant, testified substantially to the same facts as the witness Stone. West William, Tobe Grimes, Sam Cannon, Gene Randall, and Friendly Hawk testified to threats made by Black against the life of Peterson; and it is in evidence that some of these threats were communicated to the defendant.

The evidence introduced by the State made a strong case of murder, and the verdict of the jury was entirely authorized, provided they believed the evidence for the State, and rejected the evidence for the defendant. Inasmuch, however, as the jury were precluded from considering the law of voluntary manslaughter as applicable to the case, and consequently were not permitted to consider the finding of a verdict against the defendant for voluntary manslaughter, the defendant is entitled to a new trial. The witnesses may be unworthy of belief. But that does not deprive the accused of the right to have all of the issues which were properly raised by the evidence submitted to the jury. The evidence quoted above, if true, was sufficient to show that there was "an actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion," etc. The jury should have been permitted to say in their verdict whether such was the truth of the case, and whether the killing was the result of that "sudden, violent impulse of passion supposed to be irresistible," and whether there was "an interval between the assault or provocation given and the homicide, of which

the jury in all cases shall be the judges, sufficient for the voice of reason and humanity to be heard."

*Judgment reversed. All the Justices concur, except*

FISH, C. J., and ATKINSON, J., dissenting. In our opinion there was no evidence which would authorize an instruction to the jury on the law of voluntary manslaughter; and we therefore dissent from the ruling made in the headnote.